Joseph P. McGurk, Esq. SBN 023733
jmcgurk@themcgurklawfirm.com
**THE MCGURK LAW FIRM, P.L.L.C.**
222 East Main Street
Suite 212
Smithtown, New York 11787
Telephone (631) 265-6300
**Attorneys for the Plaintiff**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| WILLIAM PRENTICE,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF MARICOPA; THE CITY OF MARICOPA POLICE DEPARTMENT; OFFICER IRENE MCCRORY AND JOHN DOE MCCRORY; OFFICER CARMEN NYLANDER AND JOHNDOE NYLANDER; Black Business Entities 1-10; John Does 1-10; and Jane Does 1-10,<br><br>Defendants. | Case No. 2:20-cv-00704-SMB-CDB<br><br>**FIRST AMENDED COMPLAINT** |

The Plaintiff by way of his Complaint against the above captioned Defendants hereby alleges as follows:

## THE PARTIES.

1. The above captioned individually named Plaintiff, William Prentice, (hereinafter referred to as "**Prentice**"), is a resident of the State of Arizona.

2. The individually named Defendant Police Officer Irene McCrory ( hereinafter referred to as "**McCrory**") and Police Officer Carmen Nylander, (hereinafter referred to as "**Nylander**"), are being sued in their individual capacities as City of

1

Maricopa police officers as they were acting in that capacity as employees, agents, and servants of the Defendants when they violated the Plaintiff's rights and/or otherwise assaulted and battered him.

3. The Defendant, City of Maricopa is a municipal corporation within the state of Arizona, and at all relevant times employed the Defendant Police Officers.

4. On information and belief, Defendant Police Officers are residents of the state of Arizona.

5. The Defendants are not entitled to qualified immunity or governmental immunity.

6. At all times mentioned, McCrory and Nylander were employees of the City of Maricopa Police Department acting within the scope and authority of employment. Each individual defendant is sued individually and in her official capacity as a City of Maricopa Police Officer.

7. The Defendants, the City of Maricopa and/or the City of Maricopa Police Department are municipal corporations duly organized and existing under and by virtue of the laws of the State of Arizona.

8. That upon information and belief the Defendants were responsible for, *inter alia*, the development, promulgation and enforcement of certain polices, customs and practices governing the provision of law enforcement services involving deaf persons and/or persons who are hearing impaired.

9. That at all times relevant to this action the Defendants were negligent in the hiring, training, supervision, discipline, retention and promotion of the agents, servants

and/or employees of the City of Maricopa Police Department.

10. That at all times relevant to this action the Defendants knew or should have known of the discriminatory nature, bad judgment, and unlawful propensities of the officers involved in the violation of civil rights, assault, false arrest and malicious prosecution of the Plaintiff.

11. The Plaintiff is informed and believe and on that basis allege the Defendants sued as JOHN DOES 1 through 10, JANE DOES 1 through 10 and/or BLACK BUSINESS ENTITIES 1 through 10, inclusive are fictitious names of Defendants whose true names and capacities, at this time, are unknown to the Plaintiffs. When the Plaintiffs learn of the Defendant's true names, they will seek leave to amend this Complaint accordingly.

## JURISDICTION AND VENUE.

12. This action is brought pursuant to 42 U.S.C.A. § 1983. Jurisdiction is founded upon 28 U.S.C.A. § 1343. Plaintiff further invokes the pendent jurisdiction of this court to hear and decide claims arising under state law pursuant to 28 U.S.C.A. § 1367. Venue is proper under 28 U.S.C.A. § 1391 in that all claims arose in this district.

13. The above captioned Defendants have each caused acts to occur in the State of Arizona and County of Pinal out of which the Plaintiff's claims stated herein arise.

14. Venue is proper in this District pursuant to 28 USCA § 1391 (b) (1) and (2), respectively.

**GENERAL ALLEGATIONS**.

15. The Plaintiff hereby incorporates all prior allegations set forth in the foregoing paragraphs as if fully set forth herein.

16. The Plaintiff is an adult male who has been deaf since birth and communicates through American Sign Language (ASL) only.

17. On or about April 8, 2019, Plaintiff was one of three (3) roommates living at the private residence located at West Oliveto Avenue in the City of Maricopa, (hereinafter referred to as the "**Home**").

18. Between approximately midnight and 4 a.m. on the early morning of April 8, 2019, Plaintiff and his roommate Gary Vasquez, (hereinafter referred to as "**Vasquez**"), got into an argument because, *inter alia*, Prentice had begun to vacuum and clean up dog feces on the carpeting and tile flooring after having stepped in such.

19. Vasquez became angry with Prentice and refused to let him continue to clean and became physically abusive toward Prentice obstructing him from completing the cleanup.

20. As a result, Prentice decided to remove himself from the Home and began preparing to move out immediately.

21. In the late afternoon hours of April 8, 2019, Prentice began to remove his property from that Home and had obtained the assistance of his friend, Fred Greenspan, (hereinafter referred to as "**Greenspan**"), who lived nearby.

22. Due the volume of belongings, Prentice and Greenspan were required to make multiple trips to and from the Home and could not complete the move out on April

8, 2019.

23. As a result, Prentice and Greenspan planned to return to the Home during the early morning hours of April 9, 2019 in order to recover the remainder of Prentice's belongings therefrom.

24. Prentice was concerned that Vasquez would engage in a physical altercation with him and/or otherwise prevent him from peacefully removing himself and his belongings from the Home.

25. As a result, and in an effort to avoid a conformation with Vasquez, Prentice enlisted the aid of Greenspan, who agreed to contact the City of Maricopa Police Department and request a Civil Standby.

26. In furtherance thereof, Greenspan contacted an individual known to him as Commander James Hughes of the City of Maricopa Police Department, at approximately 6:45 a.m. on April 9, 2019, and requested that the City provide a Civil Standby.

27. The City, acting by and through Commander Hughes, advised Greenspan that it would dispatch officers to the Home on the morning of April 9, 2019 as part of the requested Civil Standby in order to prevent any altercation between Plaintiff and Vasquez.

28. Shortly thereafter, an individual identifying herself as McCrory contacted Greenspan telephonically and advised that he and Prentice were to stop one block away from the home and await her arrival.

29. Subsequently, McCrory, Prentice and Greenspan arrived at the Home to be followed approximately ten (10) minutes later by and individual identifying herself as

Nylander.

30. As Greenspan is fluent in American Sign Language, initially he acted as an interpreter between the Prentice, McCrory and Nylander and expressly and repeatedly advised them of the fact of the Plaintiff's deafness.

31. Initially, McCrory and Nylander entered the Home and attempted to use Video Remote Interpreting, (hereinafter referred to as "**VRI**"), to communicate with Prentice.

32. The efforts to utilize VRI failed both inside and outside the Home due to the inadequacy of the VRI utilized by the City of Maricopa and/or the City of Maricopa Police Department.

33. At all relevant times hereto, the City of Maricopa and/or the City of Maricopa Police Department did not have any policy for the provision of, *inter alia*, in person, onsite ASL translation other than the defective VRI. Prentice was unable to communicate with either McCrory or Nylander regarding any of the interactions which occurred on the date in question.

34. Additionally, and/or alternatively, at all times relevant hereto, the City of Maricopa and/or the City of Maricopa Police Department have a custom and practice which omits the provision of adequate training of its officers and/or the provision for in person, on site ASL.

35. At all times relevant hereto, the City of Maricopa and/or the City of Maricopa Police Department have failed to enact policies and/or have engaged in a custom or practice which fails ensure effective communication with individuals who are

deaf or hard of hearing such as, *inter alia*, the provision of qualified ASL interpreters, CART, and/or adequate assistive listening devices.

36. At all times relevant hereto, the City of Maricopa and/or the City of Maricopa Police Department's policies, customs and practices pertaining to deaf and/or hearing impaired persons has effectively excluded, segregated, denied services, or otherwise improperly caused such disabled persons to be treated differently in the provision of law enforcement services and/or in the course of such governmental entities' provision of such law enforcement services within their jurisdiction.

37. McCrory and Nylander observed as Prentice walked upstairs to the second floor of the Home to retrieve his remaining belongings.

38. After having spoken with the two other roommates (including Vasquez), both McCrory and Nylander communicated to Greenspan that he and the Prentice were free to leave.

39. In fact, Nylander was recorded on Axon Body Camera Video as repeatedly stating to Greenspan that "…we are not going to arrest you".

40. Shortly thereafter, the Defendant Officers then approached Greenspan, who had already started his car and was just about to pull away from the curb and instructed him to turn of the vehicle and to tell Prentice to get out of the car.

41. After having been advised of this request via American Sign Language by Greenspan, Prentice complied with the request to vacate the vehicle.

42. Once Prentice was outside the vehicle, McCrory and Nylander began attempting to speak to him, (despite their actual knowledge of his deafness), and gestured

to him to turn around.

43. Prentice was unable to communicate with the Officers and did not understand what was happening or what was being asked of him.

44. Suddenly, Nylander put her hands on Prentice and twisted his arms into his back and put handcuffs on him.

45. The handcuffs were extremely tight and caused the Prentice intense pain and confusion.

46. Additionally, because Prentice communicates exclusively through the use of ASL which necessitates hand and arm movements, handcuffing Prentice in the back essentially "gagged" him and totally preventing him from communicating with anyone.

47. As a result, Prentice did not know why Nylander had manhandled and handcuffed him.

48. Neither officer provided either Prentice or Greenspan with any written communication as to the reason for the purported arrest.

49. In fact, Greenspan repeatedly stated that the Officers the handcuffs were causing Prentice harm and plaintively asked why they were arresting Prentice.

50. In response, Nylander advised Greenspan that they were taking Prentice to the police station. No further elaboration was provided.

51. The officers then ordered Greenspan to move away from them leaving Prentice with absolutely no way to communicate with them.

52. As Nylander began roughly pushing the handcuffed Prentice toward a police vehicle he began to scream with confusion and pain and struggled to maintain his

balance.

53. As a result, Nylander threw the Plaintiff toward a police vehicle causing him to awkwardly stumble toward it.

54. Upon reaching the police vehicle, Nylander grabbed Prentice and further tightened the already excruciatingly tight handcuffs, shaking his arms and causing him to scream and pull away from her in pain.

55. Nylander then took the Plaintiff by the shoulders, put her legs between his and threw him to the ground causing, *inter alia*, Prentice's head to strike the street beneath them.

56. After struggling on the ground for approximately five minutes, Nylander then picked Plaintiff up and roughly threw him into the rear of the police vehicle.

57. McCrory then drove Prentice to the police station, all the while as he was screaming in pain and utter confusion and fearing for his life.

58. Upon arrival at the City Police Station, the Prentice was (again) not provided with a certified ASL Interpreter.

59. As a result, again, Prentice was completely unable to communicate with any of the City Police Officers.

60. After approximately an hour in custody, Prentice was suddenly, and without explanation, released to Greenspan who had been waiting in the lobby of the City Police station.

61. No paperwork regarding the purported arrest, or any explanation whatsoever for such was given to Prentice or Greenspan.

62. The Prentice learned later that Vasquez had told McCrory and/or Nylander that Prentice had scratched and/or otherwise assaulted him the night before.

63. This even though the Officers interviewed the third roommate on site who advised them, (on Axon Body Camera Video), that, *inter alia*, Prentice did not assault Vasquez and that a scratch (if any) was likely an accident due to Prentice's need to touch Vasquez and wake him from a drunken stupor the night before when he was attempting to leave the Home.

64. In fact, immediately prior to the purported arrest, McCrory appears to be speaking on her cell phone with an individual reasonably believed to be one, Sgt. Smalley at Police HQ.

65. That communication, (part of which is captured on Axon Body Camera Video), appears to include the instruction to arrest Prentice despite the absence of, *inter alia*, probable cause.

66. Pursuant to Ariz Rev Stat Ann § 12-242(C), where, as here, "…a person known or ascertained to be deaf is arrested and taken into custody for any alleged violation of a criminal law of this state, the arresting officer, the officer's superiors or the court shall procure a qualified interpreter in order to properly interpret any of the following: a. Warnings of the person's constitutional privilege against self-incrimination as it relates to custodial interrogation. b. Interrogation of the deaf person; and c. The deaf person's statements."

67. As stated *supra*, the Defendants failed to procure a qualified interpreter and Prentice was never provided with a. Warnings of his constitutional privilege against self-

incrimination as it relates to custodial interrogation. 2. Interrogation of the deaf person; and 3. The deaf person's statements.

68. Upon information and belief, at all times relevant hereto, the City of Maricopa and/or the City of Maricopa Police Department's policies, customs and practices pertaining to, *inter alia*, reports of domestic violence mandate the arrest and detention of an induvial alleged to have engaged in such conduct without regard to whether probable otherwise cause exists for such arrest.

69. Based upon this claim, and without any corroboration by Vasquez or any other witness, on April 9, 2019, Nylander and McCrory proceeded to unlawfully arrest Prentice.

70. Prentice did not resist this purported arrest and was not provided with a certified ASL Interpreter but nevertheless was subjected to physical and mental abuse by Officer Nylander and detention without charge.

71. Prentice was taken to the City of Maricopa Police headquarters and placed in a holding cell; his arrest was not processed.

72. Prentice was never charged with any crime and was released after having been detained in the custody of the Defendants for several hours.

73. As a result of Prentice's false arrest, incarceration, assault, malicious prosecution, abuse of process and violation of his civil rights, he has suffered degradation, humiliation, loss of reputation and esteem and various other emotional and physical injuries.

74. As stated *supra*, the City of Maricopa and/or the City of Maricopa Police Department have pursued policies and customs of deliberate indifference to the rights of persons who are deaf in their jurisdiction, including the Prentice, in the procedures for supervising and removing, when appropriate, unstable and violent police officers from their duties.

75. Upon information and belief, and as stated *supra*, the City of Maricopa and/or the City of Maricopa Police Department knew, or should have known of, *inter alia*, McCrory's and/or Nylander's tendencies to make unlawful arrests, unlawful seizures, use excessive force, and otherwise commit unlawful acts, but took no steps to correct or prevent the exercise of such tendencies.

76. Upon information and belief, the City of Maricopa and/or the City of Maricopa Police Department knew, or should have known prior to April 9, 2019, that, *inter alia*, the perpetration of unlawful arrests without probable cause, commission of other unlawful acts, and the use of excessive force and the infliction of injury to persons in the custody of, *inter alia*, McCrory and/or Nylander, was occurring, in that there were reports of such unlawful conduct.

77. At all times relevant hereto, City of Maricopa and/or the City of Maricopa Police Department failed to institute, *inter alia*, a bona fide procedure in which Certified ASL Interpreters are to be provided in violation of, *inter alia,* the Americans With

Disabilities Act (ADA).

78. At all times relevant hereto, the policies, customs and/or practices of the City of Maricopa and/or the City of Maricopa Police Department which caused Prentice's injuries as alleged herein include, but are not limited to: (a) the failure to maintain a list of sign language and oral interpreting services that are available (on-call 24 hours per day); (b) the failure to provide qualified interpreters as needed; (c) the failure to screen for the quality and skill of its interpreters and/or their reliability; (d) the failure to update the aforementioned list annually; (e) the failure to provide a qualified sign language or oral interpreter who is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary; and (f) the failure to provide training and/or to have its officers demonstrate a working knowledge of the ADA Guide for Law Enforcement Officers pertaining to communicating with people who are deaf or hard of hearing.

79. At all times relevant hereto, as to the policies, customs and/or practices of the City of Maricopa and/or the City of Maricopa Police Department enumerated *supra*, there is a direct causal link between such policy, custom or practice and the constitutional violations alleged herein.

80. At all times relevant hereto, the City of Maricopa and/or the City of Maricopa Police Department, through their deliberate conduct were the moving force

behind the injuries suffered by Prentice as alleged herein.

81. At all times relevant hereto, the City of Maricopa and/or the City of Maricopa Police Department had notice that the as to the policies, customs and/or practices enumerated supra, were deficient, otherwise unlawful and/or unconstitutional and would result in the violation of Prentice's rights.

82. At all times relevant hereto, the City of Maricopa and/or the City of Maricopa Police Department had notice that the as to the policies, customs and/or practices enumerated *supra*, were sufficiently inadequate and as such amounted to deliberate indifference toward the rights of Prentice.

83. At all times relevant hereto, the City of Maricopa and/or the City of Maricopa Police Department had notice that the as to the policies, customs and/or practices enumerated supra, were so the inadequate in the area of training as to, *inter alia*, persons who are deaf and/or hard of hearing that it was obvious that, the City of Maricopa and/or the City of Maricopa Police Department should have known that unlawful conduct by its officers was predictable.

84. At all times relevant hereto, the City of Maricopa and/or the City of Maricopa Police Department had notice that the as to the policies, customs and/or practices enumerated *supra*, had notice that, *inter alia*, the provision of law enforcement

services involving persons who are deaf and/or hard of hearing a recur on a continued basis such that is was predictable that its officers lacking specific tools to handle such situation would violate citizens' rights.

85. On September 23, 2019, a Notice of Claim was served upon the Defendants, setting forth:

    a) The name and post office address of the Claimant;

    b) The claims for malicious prosecution and abuse of process;

    c) The time, place, and the manner in which the claims arose; and

    d) The items of damages and injuries sustained so far as practicable.

86. The Notice of Claim was served upon the Defendants and/or upon such individuals authorized to accept service for the public entity and/or public employees within 150 days after Prentice's several causes of action accrued.

87. The Defendants have failed, neglected and refused to pay, settle, compromise or adjust Prentice's claims.

88. Prentice has duly complied with all of the conditions precedent to the commencement of this cause of action.

**FIRST CAUSE OF ACTION—VIOLATION OF CIVIL RIGHTS**

89. Prentice reiterates and realleges the facts stated above as if fully stated here.

90. As a result of their actions, Defendants, individually and in conspiracy with each other, under color of law, deprived each Prentice of his right to freedom from deprivation of liberty without due process of law in violation of the Fourth and

Fourteenth Amendments to the Constitution of the United States and 42 U.S.C.A. § 1983.

91. Defendants subjected Prentice to these deprivations of his rights either maliciously or by acting with a reckless disregard for whether his rights would be violated by their actions.

92. As a direct and proximate result of the acts of Defendants, Prentice has suffered physical injuries, endured great pain and mental suffering, and was deprived of his physical liberty.

### SECOND CAUSE OF ACTION—VIOLATION OF CIVIL RIGHTS

93. Prentice reiterates and realleges the facts stated above as if stated fully here.

94. As a result of their actions, Defendants, individually and in conspiracy with each other, under color of law, deprived Prentice of his right to freedom from the use of excessive and unreasonable force in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C.A. § 1983.

95. Defendants subjected Prentice to these deprivations of his rights either maliciously or by acting with a reckless disregard for whether his rights would be violated by their actions.

96. As a direct and proximate result of the acts of Defendants, Prentice suffered physical injuries, endured great pain and mental suffering, and was deprived of his physical liberty.

### THIRD CAUSE OF ACTION—VIOLATION OF CIVIL RIGHTS

97. Prentice reiterates and realleges the facts stated above as if stated fully here.

98. As stated *supra*, the Defendants, as municipal policymakers, in the hiring, training and supervision of the Defendant officers, have pursued policies and/or customs of deliberate indifference to the rights of persons in their jurisdiction domain and those of Prentice, violating his rights to freedom from the use of excessive and unreasonable force and freedom from deprivation of liberty without due process of law in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C.A. § 1983.

99. As a direct and proximate result of the policy and custom of deliberate indifference of the Defendants, the individually named Defendant officers committed the unlawful acts referred to above and thus, Defendants are liable for Plaintiff's injuries.

### FOURTH CAUSE OF ACTION - GROSS NEGLIGENCE, INTENTIONAL, WILLFUL AND WANTON MISCONDUCT AND ASSAULT AND BATTERY

100. Prentice reiterates and realleges the facts stated above as if stated fully here.

101. The Defendants owed Prentice a duty to act prudently and with reasonable care, to avoid unlawful arrest, the use of unnecessary and unreasonable force, to reasonably secure proper medical treatment, and not to act in a grossly negligent manner.

102. The Defendants breached the above duties and were negligent and grossly negligent, acted intentionally and/or grossly negligently, and acted so recklessly as to demonstrate a substantial lack of concern as to whether injury or death would result, and/or acted with willful and wanton misconduct toward Prentice breaching their duties

in a number of ways, including, but not limited to:

 a. Failure to communicate with Prentice prior to arresting him;

 b. Failure to communicate with Prentice prior using force against him;

 c. Failure to obtain prompt and immediate emergency medical attention;

 d. Failure to formulate and implement policies and/or customs police standards before, inter alia, arrest and/or the application of force;

 f. Failure to ascertain and understand Prentice's state of mind before unlawfully arresting, assaulting and detaining him; and/or

 g. Any and all additional acts of gross negligence and/or willful and wanton misconduct which may become known through the course of discovery.

103. As stated more fully in the foregoing paragraphs the Defendants committed an assault and a battery on the Prentice.

104. As the result and proximate cause of the Defendants' conduct, as described above, the Prentice suffered serious injuries including and other internal injuries resulting in pain, suffering and other noneconomic damages as well as medical expenses and bills, lost earning capacity and other economic damages.

**WHEREFORE**, Prentice prays for judgment as follows:

1. The entry of a judgment that the Defendants violated his rights under state law, and violated his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States;

2. The entry of a judgment, jointly and severally, against McCrory, Nylander the City of Maricopa and the City of Maricopa Police Department for compensatory damages in the amount of $ 1,000,000.00;

3. The entry of a judgment, jointly and severally against McCrory, Nylander the City of Maricopa and the City of Maricopa Police Department for punitive damages in the amount of $2,000,000.00 and

4. The entry of a judgment:

a) Awarding Prentice his reasonable attorney fees and litigation expenses pursuant to 42 U.S.C.A. § 1988; and

b) Granting such other, further and different relief as to this Court seems equitable, just and proper under the circumstances.

**RESPECTFULLY SUBMITTED** this 15th day of September 2020.

                             **THE McGURK LAW FIRM, P.L.L.C.**

                           By   */s/ Joseph P. McGurk, Esq.*
                                Joseph P. McGurk, Esq.
                                222 East Main Street
                                Suite 212
                                Smithtown, New York 11787
                                Telephone: (631) 265-6300
                                Attorneys for the Plaintiff